Go ahead, Mr. Park. Thank you, Your Honor. Good morning. My name is Jim Park. I'm here on behalf of Christian Gaybor. He has been convicted of one count of interference with commerce by threats and violence and another count of brandishing of a firearm during a commission of a crime of violence. For those two convictions, he is serving 22 years combined. He's serving 15 years on count one and seven years on count two. By the time that he is released from custody based on this conviction, he will have been 46 years old. And at the time of the commission of defense, he was 24 years old. Your Honor, prior, during jury selection and the first day of trial, the counsel for the defense disclosed during an ex parte hearing that they wished to call an expert. For reasons unknown, that expert was not disclosed to the government prior to trial. Before the jury selection was completed, because they did not have enough jurors, the counsel for the defense explained to the court that they intend to call a psychologist from University of Arizona. He's a professor. He has testified previously as an expert regarding human factors, which went to the court of the defendant. The government's case against Mr. Gabor was this. He was the inside man for the armored car. He was the driver. He operated in conjunction with co-defendants to commit this crime. The court of the defense was he made a mistake in letting in wrong people and thinking that that was his partner. But, counsel, don't we have a very high standard of review on that? You have to show abuse of discretion. That is correct, Your Honor. What case are you relying upon to support your argument that the court abused its discretion? Judge, it's been cited. The decision is in Morales. Also, it goes to the even in Sescicelli that the government has cited. It talks about the abuse of discretion standard. But how did the government abuse? That's what I'm trying to get to. How did the court abuse its discretion in this case by denying the expert? The court in this case made a finding. Not that the crux of the court's decision, the trial court's decision was that. It wasn't because of late disclosure that he's excluding this witness. It was because the trial court felt, based on the trial court's experience, that a psychologist testifying by human factors would not add anything to the factual findings or assist the jury. Why isn't that within the discretion of the trial court under Rule 702? It is within the discretion of the trial court. However, that is an erroneous finding as to what could a human factors expert could testify to. Are all the facts. It's not what he could testify to. It's whether, under the rule, that testimony, quote, will assist a prior fact. And, you know, I think it's pretty plain to me that the reason for that ruling is, well, you know, in fact, the subject matter of the expert testimony says it all. You know, it's within the everyday knowledge of every human that we're subject to human factors, that, you know, people make mistakes in identification as well as in other areas. And so why isn't it within the discretion of the trial court to say, well, I don't think that testimony will assist a prior fact. But, Judge, I think it goes to, we have a lot of levels of common knowledge. For instance, if you drink and you drink alcohol, for instance, or take medication that affects your ability, your balance will be lost, your judgment will be lost. But to explain how that goes, an expert could come in on physiology and explain why do you lose these things. And an expert could have came in and testified. Why do you make mistakes? Under what circumstances are you likely to make more mistakes? Under what circumstances are you going to be able to make mistakes as to identification because of the distraction factor? That may be common knowledge, but an expert could explain how the whole thought process goes through in making those mistakes. And the jurors, it would assist the jurors in weighing the facts, whether the government's theory was correct or the defense theory was correct. And that's why the trial court abused its discretion. The government relies on Cesar Celli. But that's distinguished. In that particular case, the expert was allowed to testify about who, the expert could not testify the ultimate fact, but he could testify about general tendencies, what factors does affect a person during a gun situation. A little different. But in this particular case, an expert could have assisted the jurors. The second issue, Your Honor, is the sentencing enhancement. There's a significant bump. It went from a minimum sentence of 108 months to 168 months, a 40-plus years difference. And that was based on an erroneous application of the sentencing guideline, an erroneous interpretation of the sentencing guideline by the trial judge. In that, Your Honor, the defense counsel argued that the court should not use the but-for test to determine the role for an organizer or a leader. And that was specifically argued to the court. The court, however, disregarded that argument and used a but-for test. Without Mr. Gabor's knowledge of how the operation worked, without his assistance, without him being the inside man, things would have not worked. But that was the situation in Harper. In Harper, the court rejected the but-for test. In Harper, that particular case, the person, Ms. Harper, was a former bank teller. She knew certain knowledge about the ATM machines, how it worked. And when you look at the totality of the facts, Mr. Gabor was not the organizer or the leader. In fact, a co-conspirator who had testified, who received ultimately the least amount of time in the entire case, when he was probably the most culpable, who got away with the most amount of money. He was there present from the very get-go. He knew the other co-defendants, at least two of the other co-defendants. At least three years prior to this incident, he had recruited the fourth co-defendant. And then the fourth co-defendant recruited the fifth co-defendant. Mr. Musa was there from the very beginning. He was the ringleader. He kept most of the money. In fact, he was the one who was last seen with the money. And there's a substantial amount of money that's still missing. And the person who last had it was Mr. Musa, the one who testified against Mr. Gabor at Mr. Gabor's trial. Based on the facts, based on Mr. Musa's also extensive planning, buying the ties to buying the victim, buying the clothes, laying it out, following the truck, making the call, making the meeting prior to the actual theft or the robbery of the armored car. What everything that he did was, Mr. Musa was the organizer. And he had direct supervisory control because these were his former friends. But Mr. Gabor is not the ringleader or the organizer in the trial court. He used one factor, and that was the but-for test. Without Mr. Gabor's assistance, it wouldn't have happened. And that is true. Without Mr. Gabor's assistance, it wouldn't have happened. But that was the wrong test to use by the trial court in using the enhancement. Judge, I have about two minutes. I'd like to reserve the rest for rebuttal. That's fine. Thank you. We'll hear from the government. May it please the Court. My name is Fred Batista. I'm an assistant United States attorney with the U.S. Attorney's Office in Phoenix. I was the trial attorney on this particular case. With respect to the issue of the expert witness, the court in this case did not abuse its discretion in refusing to admit the proffered testimony. And that was done on two grounds. One, the proffered testimony was untimely. Trial had already commenced. And in this particular case, during the ex parte hearing, the defense counsel acknowledged that in this case there was a reciprocal discovery agreement that had been ongoing since February 2nd. And this trial was in October of that year. So the proffered testimony was in violation of the reciprocal discovery agreement. Did the district court rely on that in its ruling? Yes, Your Honor. I believe that the district court, in reviewing the transcript of the ex parte hearing with defense counsel, I believe that the district court relied on both bases for the denial of the proffered testimony. The court specifically asked the defense counsel, was there a reciprocal discovery agreement? Yes. What was the date of it? The defense counsel notified the court that the letter went out on February of 2002. Trial was in October. And so there clearly was a violation of the reciprocal discovery agreement. And the court noted specifically to the defendant that the notice was not timely. And then with respect to the issue of the proffered testimony, it's the government's position that in this particular case, the defense was seeking to proffer testimony about something that was well within the purview of the juror's experience. And in this case, the sole basis for the defendant's defense would have been that he was sitting in his armored car, that the messenger knocked on the door to his right, and that he inadvertently let someone else in by mistake. What we have here, Your Honors, is just a simple situation where somebody possibly, but in this case not in light of the fact that the defendant has acknowledged that he was involved in the robbery. He acknowledges that in his brief. But for purposes of the argument that the defendant sought to make to the jury, it's simply that the defendant failed to check his mirrors properly and failed to look through the window. And this is almost all jurors drive vehicles. We all look through windows. We all check our mirrors. There's nothing really exotic about this particular case. The question really is not whether or not he failed to do that. The question is whether that's credible, right, in this fact situation. And in this fact situation, Your Honor, I think it's not credible whatsoever. And also for the court's, for this court's information, all four other co-defendants had pled guilty before the trial in this case, and all four co-defendants had told the court that the defendant was involved in the robbery prior to the trial. So the court in this case, since it had such, the level of information was so extensive that the defendant was clearly involved, it was not an abuse of the discretion in this particular case for the court to not allow this information in. With respect to the second argument, Your Honor, the defendant, I think the defendant makes a number of arguments in his brief. I think it's clear that for this enhancement to apply, the government is only bound by proof, by a preponderance of the evidence. Clear and convincing evidence would not be required in this particular case. It's a four. So did you file a sentencing memorandum? Yes. And in that sentencing memorandum, did you support the four-level enhancement for organizer? Yes, Your Honor. And in that sentencing memorandum, what cases did you rely upon to support the enhancement? Your Honor, at this point, in all honesty, I don't recall the cases which were cited in the sentencing memorandum. I think the government's – the primary thrust of the government's sentencing memorandum was based on the facts of the defendant's conduct. And I think the – In your mind, was it a but-for factor? Well, Your Honor, let's talk about that. The case in Harper is, in a sense, is a but-for because in that case, the only conduct of the defendant was that that defendant in Harper had specialized knowledge about the operation of an ATM machine. So the court in that case said, but for that specialized knowledge, this wouldn't have occurred, and then the enhancement was placed. But in this case – But, Counsel, wouldn't that be true in almost every case? If we use but-for, almost everyone could be considered an organizer, a leader. Couldn't that be the case? That's true, Your Honor. But I don't believe that the court in this case used a but-for test. I think what the defense is trying to do is squeeze this case into the mold of Harper. But when you look at the court's findings, the court didn't make just that finding. The court specifically held that the defendant was a planner and an organizer. But the court said they relied upon his specialized knowledge of the subject matter. The court didn't point to any organizing that the defendant did, any leadership role. The court really focused on the fact that the defendant knew the business from the inside. The court also said that basically the defendant had played an integral role in both planning and organizing. But no specifics. What page are you on? Of the transcript. ER-164, is that where you're? It's very short. I thought you were quoting from the transcript. You're just relying on your memory. Here's the problem with your treatment of Harper. I mean, you're just trying to say, well, the facts are a little different, but Harper announces a rule, right? It says that, you know, the but-for test is not the test that we have established for determining whether this rule adjustment should apply. And then cites Morris Molina. I mean, it's not a rule confined to one case. It's a general rule of application that the but-for test shouldn't be applied, you know, on this guideline. Yes, Your Honor. And I believe if you look, and it is, this was a transcript. This is ER-164. 154? 164. 164. 164. It's also page 30 of the government's brief. Go ahead. But the court goes on to state that, and he became an integral part of the planning process because they relied on his specialized knowledge of the subject matter. Now, look at Ron. Just a minute. Before we move on from this phrase, the fact that he became an integral part of the planning process doesn't mean that he was an organizer or planner, because the only way he became an integral part was because they relied on his specialized knowledge. That's all there is to that. Well, Your Honor, but... In my mind, reliance on that knowledge alone is not enough, but I think Judge Rawlinson has a question for you. Yeah, I did. On line 9, it says, even if you want to use the but-for test. So that's the test the court articulated. Well, I think he was saying that you could use the but-for test, but I think he's making a more expansive finding there. When the court goes on to state that he made extensive, valuable contributions to the planning and organizing process, and that information, specialized information, was used, I say, to plan and orchestrate the robbery. So his contribution was bringing, you know, his knowledge as an insider. Well, Your Honor, but he did a lot more than that. When you look at the facts of this case, what did he do? But the district court didn't rely on it. The only thing the district court relied on was his specialized knowledge as an insider as to what was going on, and then, as Judge Rawlinson says it appears to me, he applied the but-for test. It says but-for, you know, the defendant having this inside knowledge, they couldn't have done this job. Well, Your Honor, I think they say, I think it can be read that narrowly, but the government believes, and having been there, that the court was aware of all the facts in the case. The government had argued all of the defendant was. Yes. I mean, the government had argued all of the different conduct. The problem is we have to rely upon what the court articulated in imposing the but-for test. And the government does acknowledge that it is a limited state. And, you know, and that's bolstered by the pre-sentence report. You know, it repeats the same thing. That's all it relies on, right? The pre-sentence report is also limited. The government made extensive arguments to the court at the time of the sentencing, and there was a significant amount of facts, factors that the defendant did have, did do, including he was involved in the initial organization along with the first two co-defendants. He advised the co-defendants of the truck features, all the security features of the truck. He advised them of what movements the messengers would take. But that's the specialized information that the court was. Then along with that, he allowed Mr. Moussa to follow him during dry runs. He gave them a route sheet that would tell them where the truck would be at particular times. He held a meeting at his house where they went over all the final points of the robbery. The day of the robbery, he changed the driver's schedule so that he would be driving at the time of the robbery and not be the messenger. He also caused the messenger himself to bag up all the money so that it would be ready to be stolen, which they did not normally do. When his messenger got lost at a mall, he got very upset with the messenger. He was trying very hard to keep the truck on schedule. He called the fellow robbers on his cell phone and told them that he was about to come to the Home Depot. So was Mr. Moussa given an enhancement for organizer leader? Yes, he was. And the defense counsel noted that Mr. Moussa received a lower sentence. He received a lower sentence because he was the one that was the cooperator and helped to break the entire case. He got the credit for the cooperation. That's correct, Your Honor. I see that I'm running out of time. Were there any other co-defendants who were given the organizer leader adjustment? No, there were only two. And the court mentioned also in the one thing in the pre-sentence report in paragraph 13, one of the co-defendants, Mr. Matthews, did mention that he believed that both Mr. Moussa and Mr. Gabor were the ringleaders in this particular case. It would have been different if the court had made that finding. The difficulty I'm having is the court didn't really make that finding. And I do have to acknowledge to the court that the court was not as clear as it could have been with respect to all the different factors and all the different involvement that Mr. Gabor had done. All right. Thank you. Mr. Bautista, thank you for your argument. Is there a rebuttal, Mr. Parker? Thank you, Your Honor. Your Honor, as the government pointed out, the trial judge had taken pleas from four co-defendants prior to trial, Mr. Gabor. Maybe the trial judge also made a determination to credibility regarding Mr. Gabor's defense instead of giving it to the jury to decide what the export could bolster the defense. The trial judge instead, by precluding, because as the government stated, having heard all the previous evidence, had prejudged and taken the factual finding away from the trial jury itself. And I believe that in itself is an abuse of discretion. There's nothing else that I'd like to read. Well, wait a minute, wait a minute. I mean, that's what the government said. Judge McNamee didn't say that. Did he? No, he did not. Well, you know, I'm not letting this expert testify because I know the defendant's going to lie or he's lying. Right? He didn't say that. He did not say that. But that's what the government had argued, and I'm pointing out the fact that if you accept the government's argument, that may even lend more credibility to a defense argument. Were you present when the other defendants pled guilty? No, Your Honor. I had taken the case over at appeal from another lawyer. Oh, okay. Unless the court has any of these. Oh. All right. Thank you, Mr. Parker. We thank both counsel for your argument that this case is submitted for a decision. Let's see. That's Gabor. So who's next? Gabor. Gabor. Next case on the argument calendar, Brewer.
judges: Thompson, Tashima, Rawlinson